# CHARLESTON.

WEST VIRGINIA PIPE LINE CO. *v.* STATE OF WEST VIRGINIA.

Submitted December 12, 1923.    Decided December 22, 1923.

1. COMMERCE—*Oil in Transit through Pipe Line is "Interstate Commerce," Not Subject to Personal Property Tax.*

   Oil purchased at producers' stock tanks in this state by a pipe line company, and in transit through its pipe line system to purchasers in another state, is in interstate commerce and therefore not legally subject to personal property tax in this state.   (p. 290).

2.  Same—*Oil Temporarily Accumulated in Pipe Line System Not Subject to Personal Property Tax.*

    This is true, though as incidental to such commerce, quantities of the oil accumulated temporarily in collecting tanks which are part of the pipe line system. (p. 290).

Appeal from Circuit Court, Ritchie County.

The State Board of Public Works having assessed the property of the West Virginia Pipe Line Company for the year 1922, such assessment was affirmed by an order of the Ritchie county circuit court, and the Pipe Line Company appeals.

*Assessment reduced.*

*Homer Adams,* for appellant.
*Jno. T. Simms,* for appellees.

Meredith, Judge:

The West Virginia Pipe Line Company appeals from the order of the circuit court of Ritchie County, wherein that court affirmed the assessment of appellant's property for the year 1922, as fixed by the State Board of Public Works. The total assessment of the company's property in Ritchie County was fixed by the Board at $68,900; but an agreed statement of facts filed in the record shows that $9500 of that amount represented the value of the company's crude oil in its pipe lines in Ritchie County on December 31, 1921, and the company contends that as the oil so assessed was in transit in interstate commerce it was not properly taxable in Ritchie County. It appeals, therefore, on the ground that the oil was illegally taxed, and that the court erred in affirming the assessment.

The principle that property in transit in interstate commerce can not be taxed by any state, being necessarily conceded, the sole question in this case is whether the principle applies to the oil here assessed. Was it in interstate commerce?

The agreed statement of facts shows that the West Virginia Pipe Line Company is a Pennsylvania corporation, authorized to do business in West Virginia, and is engaged in buying petroleum oil from producers in Ohio and West Virginia, and credit balances from West Virginia producers and

owners covering oil in transit through the pipe lines of the Eureka Pipe Line Company in West Virginia; and in transporting the same in its crude state in its own pipe line system through several counties of the state of West Virginia to Burgettstown, Pennsylvania. At the latter point, which is fifty-two miles from the West Virginia state line, the oil is sold and delivered, under continuing contracts, to customers of appellant. Appellant's pipe line system consists of gathering and transmission lines, collecting and equalizing tanks and pumping stations, constituting one continuous system in Ohio, West Virginia and Pennsylvania.

Appellant secures its supply of oil from three sources: (1) The Eureka Pipe Line Company in West Virginia, (2) from West Virginia producers at their stock tanks, and (3) from Ohio producers at their tanks in Ohio. It procures some oil from Pennsylvania producers, but that oil does not pass through West Virginia and we are not concerned with it.

The Eureka Pipe Line Company is a carrier of oil. It furnishes credit balances to those running oil into its lines, and appellant purchases some of those credit balances from the West Virginia producers, and pays the Eureka Company for transporting and delivering the oil called for by the credit balances. Oil so purchased and transported is delivered to appellant's receiving tank at its trunk line and pumping station at Littleton, West Virginia. The oil, after being gauged in the receiving tank becomes appellant's property, and is then turned into appellant's trunk line and is carried along with other oil, purchased from producers' stock tanks, to Burgettstown. Oil purchased from producers at stock tanks in West Virginia is gauged in those tanks, whence as appellant's property it flows in divers systems of gathering lines through Doddridge, Ritchie, Pleasants, Tyler, Marion and Wetzel Counties into the collecting and equalizing tanks at pumping stations in the state, thence through transmission lines and, commingling with other oil purchased in the Eureka Company's lines and with the Ohio oil, it flows through the trunk line to Burgettstown.

The oil purchased in Ohio is collected in tanks in that state, is carried through a transmission line across the Ohio River

.into Tyler County, West Virginia, thence in a trunk line through Pleasants, Tyler and Wetzel Counties in West Virginia, and through the main trunk line to Burgettstown, Pennsylvania. All appellant's oil eventually reaches that point, at which place under continuing contracts title passes to various purchasers.

Appellant keeps no oil in storage in West Virginia, except insofar as oil accumulates in route at the various pumping stations. The capacity of the pipe lines is not sufficient to handle the output of all the pumps operating continuously; they are therefore worked alternately, the oil accumulating at each station being pumped into the trunk line as often as required to operate the trunk line continually. No pump is worked less frequently than once each week, and usually more often. The accumulations in the tanks occur only to the extent made necessary by the exigencies and means and method of transportation. No oil is consumed or manufactured in West Virginia.

Appellant's return of taxable property to the Board of Public Works shows that on December 31, 1921, the date as of which the assessment for 1922 was laid, appellant had in its West Virginia lines 23,663.45 barrels of oil, and of this, 2,574.72 barrels were in Ritchie County. The agreed facts are that of all oil transported through West Virginia in appellant's pipes, approximately 23% comes from Ohio, 40% is purchased from West Virginia producers at their stock tanks, and the residue, or 37%, is purchased from producers in the form of credit balances. While the record does not definitely disclose what proportions applied to the oil in Ritchie County on December 31, 1921, counsel seem to consider that some of the oil assessed in this case came from Ohio. In view of the fact that the pipe line from Ohio seems to run only through the counties of Tyler, Pleasants and Wetzel, the soundness of such an assumption seems doubtful, but as under our holding the ratios are not material the matter need not be discussed.

The return which we referred to as having been filed with the Board of Public Works was filed on or before April 1, 1922, and reported appellant's valuations of its property in

the state as of that date. The total value of taxable property for Ritchie County as fixed by it was $67,888.78. Under the heading "Explanatory Remarks" its 2,574.74 barrels of oil in its lines in the county were valued at $10,813.82, but appellant claimed then and claims now that this amount was not legally taxable. The Board of Public Works fixed the assessment for the county, according to the stipulation, at $9,500 for oil in the pipe line system, and $59,400 for the residue of its property, total $68,900.

So much for the facts; we turn to the one issue in the case. Was the crude oil in the tanks and pipe line system of appellant in Ritchie County on December 31, 1921, in transit in interstate commerce? The view of the state is that while there are many decisions holding that goods in shipment from one state to another in trains, in log rafts, in herds of live stock, in pipe lines, are in interstate commerce, the instant case presents an original question. In argument counsel concedes that the oil shipped through this state from Ohio is in commerce from state to state and hence is not subject to tax under the rule definitely laid down by the Supreme Court of Illinois in *Prairie Oil & Gas Co.* v. *Ehrhardt,* 244 Ill. 634, 91 N. E. 680. See also *Eureka Pipe Line Company* v. *Hallanan,* 257 U. S. 265, 42 Sup. Ct. Rep. 101, 66 Law. Ed. 227; and *United Fuel Gas Company* v. *Hallanan,* 257 U. S. 277, 42 Sup. Ct. Rep. 105, 66 Law. Ed. 234. But he insists that oil produced in this state, purchased at the producers' stock tanks by appellant and then carried through the lines to Burgettstown is not covered by the same rule. As the holdings in the Eureka Pipe Line Company case and the United Fuel Gas Company case cover facts very nearly analogous to those presented here, we should refer to those decisions before developing appellant's contentions. There the state sought to sustain a pipe line privilege tax on oil and gas lines based on the quantity of oil or gas transported therein. On appeal from this court, the United States Supreme Court held the statute imposing the tax unconstitutional as contravening the interstate commerce clause of the Federal Constitution. But counsel for the state says that those cases do not govern here; that in them the certain re-

sult of the tax would have been to tax oil pumped through this state from Oklahoma and other states, and that is concededly unconstitutional. Counsel then analyzes his position on the facts here presented. · His first point is that appellant's oil in tanks and lines in Ritchie County on December 31, 1921, was not so much in interstate transportation as in storage, and that insofar as it was in storage it was subject to state tax. Our view is that the stipulation of agreed facts sufficiently answers this contention. Paragraph 7 of that agreement, already reviewed, states plainly that there are no delays in the transmission of the oil, subject to its purchase by appellant, except such as are incidental to the means and method of transportation. The tanks serve only to aid in that transportation, and while the oil at times accumulates, such accumulations are but temporary and incidental. It is not unlike the congestion of logs in a stream in transit to another state, when impeded by flood conditions. The logs are in interstate commerce and are not subject to tax in the state where they are temporarily held. *Champlain Realty Company* v. *Brattleboro,* 260 U. S. 366, 67 Law. Ed. 309, 25 A. L. R. 1195.

If the oil is in interstate commerce at all, its temporary storage in the tanks is not material. But counsel says this oil is not in interstate commerce, as intended by the framers of the Constitution. The idea sought to be established, based on historical facts and somewhat metaphysical reasoning, is that the constitutional term "commerce" comprehends the carriage of goods by means of tangible man-made contrivances, wagons, stage-coaches, railroad equipment, log rafts, etc., that these and other artificial means of carriage, by which articles are transported from place to place, were the vehicles of commerce as contemplated by our forefathers. This position is further developed by argument that carriage of oil in pipe lines from producers' tanks across the state line is not commerce in the accurate sense, that the mere attaching of pipe lines to the wells and thus causing the oil to flow through a spigot in Pennsylvania is not commerce, that it only causes the volume of appellant's oil in this state to change its form from a pool under the ground to small columns of oil in pipes.

A purely natural process, counsel contends. We are unable to sustain this argument. True, the oil is not lifted against the force of gravity and placed into containers such as tank cars or barrels and rolled on wheels across the country. The force is applied in another way, by means of pumping stations, and the oil is forced through artificially constructed pipe lines into another state. Man-made machinery is effective only insofar as it harnesses the power which nature provides, and we see no difference whether transportation is effected by the expansion of steam in the cylinders of a locomotive, or by the pumping of oil through a system of pipe lines; the result is the same, and if goods are carried from one state to another, as shown in the present case, the result is interstate commerce.

And after all, we have said what we have said, not because it is essential to our decision, but more to satisfy the earnest argument of counsel. The Supreme Court of the United States in the Eureka Pipe Line case and the United Fuel Gas Company case seems to have decided all the principles applicable here. In the first of those cases, the court said:

> "State produced oil, gathered by a pipe line company and transported by it under a local tariff covering interstate transportation and storage, was, so far as it became a part of a stream of oil that was flowing through the company's pipes to the state line and beyond, moving in interstate commerce from the time it left the wells, so as to prevent the state from subjecting the company to a license or occupation tax measured by the volume of such traffic and none the less so because, if different orders from the producers had been received by the pipe line company, it would have changed the destination toward which the oil was started and at which it in fact arrived, the pipe line company, not the producer, being the master of the destination of any specific oil."

Why should we say more? The circuit court erred in affirming the assessment of the oil. Its judgment is reversed and judgment will be entered here reducing the amount of the company's assessment to the extent of the valuation of its oil included therein, shown by this record to be $9500.

*Assessment reduced.*